UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Thomas P. Noonan and Annette M. Noonan, | Civ. No. 16-3891 (PAM/HB) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| American Family Mutual Insurance Company, | |
| Defendant. | |

This matter is before the Court on Plaintiffs' Motion to Confirm Appraisal Award and for Summary Judgment and Defendant's Motion for Summary Judgment. For the following reasons, Plaintiffs' Motion is granted and Defendant's Motion is denied.

**BACKGROUND**

On July 18, 2015, the home of Plaintiffs Thomas and Annette Noonan sustained hail and wind damage in a storm. At the time, the home was insured by Defendant American Family Mutual Insurance Company ("American Family").

**A.   The policy**

Three parts of the Noonans' insurance policy (the "Policy") are relevant here. First, the main portion of the Policy was written on an American Family form known as the "Gold Star Special Deluxe Form" (the "Gold Star Form"). (Hellie Decl. (Docket No. 47) Ex. 1 at 2-20.) The Gold Star Form provided that American Family "insure[d] all loss or damage caused by fire or any damage caused by lightning," in addition to "other risks of accidental direct physical loss to th[e] property," subject to certain exclusions not

relevant here. (Id. at 9, 11.) Later provisions set forth a number of additional terms, including a subsection entitled "Loss Value Determination" that specified how to determine the value of any loss. (Id. at 12.)

The Policy also contained two relevant endorsements. One was entitled "Gold Star Homeowners Amendatory Endorsement" (the "Gold Star Endorsement"), which "modifie[d] such insurance as is afforded by this policy." (Id. at 21.) Specifically, the Gold Star Endorsement contained a provision that "deleted and replaced" the Loss Value Determination section of the Gold Star Form. (Id.) The other endorsement was entitled "Minnesota Mandatory Homeowners Endorsement" (the "Minnesota Endorsement"). The Minnesota Endorsement contained the following language:

> **Matching of Undamaged Property**. We will not pay to repair or replace undamaged property due to mismatch between undamaged material and new material used to repair or replace damaged material because of
>
> a. texture, dimensional differences;
> b. color, fading, oxidation, weathering differences;
> c. wear and tear, marring, scratching, deterioration; or
> d. obsolescence or discontinuation.
>
> We do not cover the loss in value to any property due to mismatch between undamaged material and new material used to repair or replace damaged material.

(Id. at 38.) The parties label this the "Matching Subsection."

**B.     Adjustment of the claim and the appraisal**

The Noonans contacted American Family shortly after the storm. The insurer conducted an inspection and sent them an estimate indicating, among other things, that their slate-shingle roof had sustained approximately $12,000 in damage. (Osdoba Decl.

2

(Docket No. 18) ¶ 1 & Ex. 2.)  The Noonans retained a public adjuster, Daryl Johnson, who disagreed with American Family's estimate.  The parties engaged in further negotiations but ultimately reached an impasse as to the total amount of the loss.  Accordingly, the Noonans (through Johnson) demanded an appraisal.[1]

The appraisal took place on September 22, 2016.  In addition to the appraisers and the umpire, both Johnson and a claims adjuster from American Family named Lori Osdoba attended.  Osdoba claims that she asked the appraisal panel to "itemize the roof award into two separate categories," one for roofing material actually damaged and another for material not damaged "but that may not match the new slate-shingles."  (Id. ¶ 11.)  That did not occur.  Instead, the appraisal panel issued its decision in two parts on a one-page form .  (Hellie Decl. Ex. 2.)  The first part, denoted "Roof," provided $117,477.79 for replacement cost and $112,778.68 for actual cash value.  The second part, denoted "Other, fascia, siding, windows, painting, a/c electrical, permit, personal," provided $23,522.21 for replacement cost and the same amount for actual cash value.  In total, the award valued the Noonans' loss as $141,000 ($117,477.79 + $23,522.21), with an actual cash value of just over $136,000.  Below these amounts, on a line entitled "CLARIFICATIONS IF ANY," the following appeared:  "This is a matching issue. Alternative products do not match current shing[l]e on the roof."  The award was signed by both appraisers and the umpire.  (Id.)

---

[1] The Policy provides that if the Noonans and American Family fail to agree on the amount of a covered loss, either may demand that the amount be set by appraisal. (Hellie Decl. Ex. 1 at 11.)  The appraisal process is well recognized in the law as a "non-judicial method to resolve disputes over the amount of a loss." Johnson v. Mut. Serv. Cas. Ins. Co., 732 N.W.2d 340, 342, 345-46 (Minn. Ct. App. 2007).

On September 29, 2016, Osdoba emailed the panel. (Osdoba Decl. (Docket No. 18) ¶ 14 & Ex. 6.) She noted that "it appears matching and direct physical damage were combined," and she asserted that actual damage to the roof totaled $30,244.81, while matching amounted to $87,232.98.[2] (Id. Ex. 6.) It is unclear precisely how Osdoba calculated these numbers, but regardless, she asked the panel to "confirm this is correct" or, if not, to "provide a breakdown" of the amounts awarded. (Id.) According to Osdoba, the panel "declined to respond" to her email. (Id. ¶ 15.)

Osdoba wrote to Johnson later that day, stating that only $30,244.81 of the replacement cost was due to direct physical damage to the roof, while the remaining $87,232.98 was due to matching. (Johnson Decl. (Docket No. 14) Ex. B.) She then asserted that payment "for matching on the roof is excluded" based on the Minnesota Endorsement, and American Family refused to pay the purported matching amount. (Id.)

**C.   This litigation**

The Noonans responded by suing American Family in Minnesota state court. After the action was removed to this Court, the Noonans moved to confirm the appraisal award, while the insurer cross-moved to vacate it. On January 4, 2017, the Court remanded the matter to the appraisal panel to clarify regarding how much of the award was for damage to the Noonans' roof and how much was attributed to matching. (Docket No. 25.)

On January 18, 2017, the appraisal panel clarified its award. (Hellie Decl. Ex. 3.)

---

[2] The sum of these numbers is $117,477.79, what the appraisal panel determined to be the roof's replacement cost.

4

It specified that actual damage to the roof totaled $41,216.79, in addition to $1,880 in temporary repairs, "put[ting] the total roof repair at $43,096.79." (Id.) The clarification also provided that the amount for "additional damaged items"—fascia, siding, windows, and the like—"does not change from the original award. That total is $23,522.21." (Id.) Therefore, the clarification allotted $66,619 in actual damages. Because the appraisal award determined the amount of the loss as $141,000, subtracting $66,619 for actual damage left "$74,381 [a]s the portion for matching undamaged property." (Id.) Although not entirely clear, it appears that American Family has now paid $66,619 to the Noonans, less their $1,000 deductible, but it has not paid the remaining $74,381 attributed to matching. (See Hellie Decl. Ex. 4 & Second Hellie Decl. Ex. 6.)

Meanwhile, despite almost two years passing since the storm, the Noonans still had not repaired their roof. Because they could not delay the repairs any longer, they spent $50,850 to repair their roof. (Noonan Decl. ¶ 2 & Ex. A.) The repair used asphalt shingles, rather than the more expensive slate shingles that had been on the roof.

Against this backdrop, the parties have now filed competing cross-Motions. The Noonans assert that the appraisal award should be confirmed and summary judgment granted in their favor. They argue that when properly construed, the Policy affords coverage for the entire appraisal award, including matching, and even if it does not, the Policy must be reformed to provide matching coverage under Minnesota law. American Family responds that the Policy does not cover matching and hence it owes nothing further to the Noonans. It also argues that because it has paid more than the Noonans spent to repair the roof, they are entitled to no further recovery.

**DISCUSSION**

The parties agree on the salient facts; their arguments concern only whether coverage is afforded under the Policy based on those facts. "Interpretation of an insurance policy and application of the policy to the facts in a case are questions of law." Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001) (citation omitted). Words in an insurance policy are given "their natural and ordinary meaning and any ambiguity regarding coverage is construed in favor of the insured." Id. (citation omitted). Insurance policies are "construed as a whole with all doubts . . . resolved in favor of the insured." Canadian Universal Ins. Co. v. Fire Watch, Inc., 258 N.W.2d 570, 572 (Minn. 1977).

Although the parties' briefs are replete with references to Policy terms, statutory minimum coverage, actual cash value versus replacement cost, and other confusing matters, the issue to be decided is simple: whether matching is covered under the Policy. According to American Family, the Matching Subsection in the Minnesota Endorsement is the beginning and end of the inquiry. This subsection provides that American Family will not (i) "pay to repair or replace undamaged property due to mismatch between undamaged material and new material," or (ii) "cover the loss in value to any property due to mismatch between undamaged material and new material used to repair or replace damaged material." (Hellie Decl. Ex. 1 at 38.) Because American Family has already paid for the damage the Noonans sustained, all that remains of the appraisal award is "$74,381 . . . for matching undamaged property." (Id. Ex. 3.)

There are two key problems with this argument. First, the Matching Subsection

6

was not part of the Noonans' Policy. The subsection is found within the Minnesota Endorsement, which states that it applies when the Minnesota Endorsement amends several specific types of policies and endorsements, including the Gold Star Form, but notably not including the Gold Star Endorsement. (Id. Ex. 1 at 37-38.) In other words, the Matching Subsection applies only when it modifies a Gold Star Form and not a Gold Star Endorsement. The omission of the Gold Star Endorsement from this list appears to be intentional, because when elsewhere specifying the types of forms modified, the Minnesota Endorsement expressly lists "a policy [that] includes the Gold Star [] Endorsement." (Id. at 37.) Because the Noonans' Policy contained a Gold Star Endorsement and not just a Gold Star Form, the Matching Subsection does not apply.

Second, even if this interpretation were incorrect, the Noonans would still prevail. As noted, the Policy includes the Gold Star Form, the Gold Star Endorsement, and the Minnesota Endorsement. The Gold Star Endorsement "deleted and replaced" the Loss Value Determination section in the Gold Star Form. The Minnesota Endorsement, however, also purports to modify the Loss Value Determination section in the Gold Star Form by, among other things, adding the Matching Subsection. Thus, the Policy creates a chicken-and-egg dilemma, depending on the order in which the Endorsements are considered. On one hand, if the Minnesota Endorsement (and its Matching Subsection) first modifies the Gold Star Form and then the Gold Star Endorsement is applied, the entire Loss Value Determination—including the Matching Subsection—is deleted and replaced. On the other hand, if the Gold Star Endorsement first modifies the Gold Star Form and then the Minnesota Endorsement is applied, the Matching Subsection would

7

remain. Neither side cites any evidence or case law suggesting which Endorsement should apply first. But this lack of clarity inures to the Noonans' benefit: the Policy is ambiguous, and that ambiguity must be construed against American Family. Am. Family Ins., 628 N.W.2d at 609. The Court concludes that the Matching Subsection cannot defeat coverage here.

American Family also argues that the Noonans cannot recover because they spent only $52,730 to repair their roof, and it has already paid more than that amount. It points to a Policy provision specifying that it will pay no more than "the amount actually and necessarily spent for repair or replacement of the damaged building." (Hellie Decl. Ex. 1 at 12.)

But accepting this logic would reward the insurer for its extensive delay in failing to pay the full amount of the Noonans' loss, and penalize the Noonans for trying to prevent further damage to the roof or to the contents of their home. The Court will not countenance such a result. The Policy expressly provides that "loss is payable within 5 working days after there is a filing of an appraisal award." (Id.) The appraisal award was filed almost two years ago and set the amount of the loss at $141,000. American Family was bound to pay that amount within five days, but it failed to do so. It cannot now argue that the loss is something less simply because the Noonans undertook subsequent repairs due to the insurer's dilatoriness.

For these reasons, the Court concludes that the Noonans are entitled to confirmation of the appraisal award and summary judgment in their favor. They also seek statutory interest on the award and attorney's fees.

8

The Minnesota Supreme Court recently recognized that pre-award interest may be recovered on an appraisal award. Poehler v. Cincinnati Ins. Co., 899 N.W.2d 135, 141 (Minn. 2017). American Family argues only that the Noonans' "demand for interest is premature until this court makes its coverage determination." (Docket No. 52 at 10.) As the Court has now determined that the appraisal award is covered, the Noonans are entitled to statutory interest.

However, the correct amount of interest is the subject of debate. The Noonans seek interest on the full amount of the appraisal award, or $141,000, from June 23, 2016, the date Johnson demanded an appraisal on their behalf. Poehler recognized that interest is appropriate from the date the insured demands an appraisal, but it expressly declined to address whether payments made by the insurer must be deducted when calculating statutory interest. 899 N.W.2d at 145 n.4 ("Cincinnati maintains that the district court erred in awarding interest on the full amount of the appraisal award . . . without deducting [sums it] had already paid to Poehler . . . when [he] demanded an appraisal. . . . We acknowledge that it is anomalous for the district court to have awarded preaward interest on the full amount of the appraisal award, but we need not address this issue because it is not properly before us on appeal."). Although Poehler left the issue undecided, it is clear that interest is available not on the full amount of the award, but rather only on the portion of the award the insurer has not paid. Prejudgment interest at the statutory rate is therefore available on the difference between the appraisal award and the payment American Family made to the Noonans, less their deductible.

Finally, it is undisputed that Minnesota law authorizes an award of attorney's fees

9

in an action seeking to confirm an appraisal award, Minn. Stat. § 572B.25(c), and American Family offers no argument why such an award should be declined here. Under the circumstances of this case, the Noonans should recover fees for being compelled to litigate in order to receive the full amount of the appraisal award. Having reviewed the time records submitted by the Noonans' counsel, to which American Family has lodged no response, the Court concludes that the amount requested is appropriate for the time expended litigating this case.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. American Family's Motion for Summary Judgment (Docket No. 45) is **DENIED**;

2. The Noonans' Motion to Confirm Appraisal Award and Summary Judgment (Docket No. 39) is **GRANTED**;

3. The September 22, 2016 appraisal award is **CONFIRMED** pursuant to Minnesota Statutes § 572B.22;

4. The Noonans shall recover from American Family $92,252, comprising $74,381 remaining unpaid on the award, plus $17,871 in attorney fees; and

5. The Noonans shall recover statutory interest on the unpaid award amount.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  December 13, 2017      *s/ Paul A. Magnuson*
                              Paul A. Magnuson
                              United States District Court Judge